IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH CUSICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DAVE GUALANDRI; SCOTT CRUZ; BRIAN ZIELMANN; KAREN DONNELLY; JODY BERNARD; THE CITY OF OTTAWA; THE COUNTY OF LASALLE; SCOTT DENTON; ROD ENGLERT D/B/A ENGLERT FORENSICS CONSULTANTS, LLC; JULIUS BALLANCO; and UNIDENTIFIED EMPLOYEES OF THE CITY OF OTTAWA AND THE COUNTY OF LASALLE, | ) ) ) ) JURY TRIAL DEMANDED ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

NOW COME Plaintiff KENNETH CUSICK, and complaining of DEFENDANTS

DAVE GUALANDRI, SCOTT CRUZ, BRIAN ZIELMANN, KAREN DONNELLY, JODY

BERNARD, THE CITY OF OTTAWA (hereinafter "City"), and THE COUNTY OF LASALLE

(hereinafter "County"), SCOTT DENTON, ROD ENGLERT D/B/A ENGLERT FORENSICS

CONSULTANTS, LLC, JULIUS BALLANCO, and UNIDENTIFIED EMPLOYEES OF THE

CITY OF OTTAWA AND THE COUNTY OF LASALLE, alleges as follows:

**Introduction**

1.      The LaSalle County jury who, on December 13, 2019, found Kenneth Cusick not

guilty of killing his then-wife Tracy Cusick saved his life. Were it not for the twelve men and

women who followed their oath and were willing to listen to the truth, Kenneth Cusick might be

in prison today serving a life-ending sentence for a crime he did not commit.

2.       That this jury eventually pulled Kenneth Cusick out of a nightmare experience with the criminal justice system was not a foregone conclusion. Indeed, a group of Ottawa and LaSalle County officials who collectively decided to frame Kenneth Cusick for causing his wife's death despite what the facts showed did their very best to secure his conviction. They failed, but not before ruining Ken Cusick's life, disparaging him in the community, destroying his reputation, and causing him years of pain and suffering as he endured a spurious investigation and trial that forced him repeatedly relive the worst day of his life.

3.       Dave Gualandri, Jody Bernard, and the law enforcement personnel working with them refused to accept what the initial investigation revealed, that Tracy Cusick's death was a tragic accident for which her husband was not responsible. They became determined to charge and convict Kenneth Cusick at any cost.

4.       They were stymied by the sitting LaSalle County State's Attorney, Brian Towne, who rightfully recognized that there was not a case to bring against Kenneth Cusick. Gualandri and others would not accept Towne's judgment, and conspired with Karen Donnelly, who had aspirations to run for State's Attorney, and involved her in their investigation.

5.       Karen Donnelly ran for State's Attorney on the defamatory platform that Kenneth Cusick had killed his wife and that if she was elected prosecutor, she would bring him to justice. Her plan succeeded and she won the election. She then followed through with her stated pre-election intention and continued a faulty investigation into Mr. Cusick despite knowing that there was no real evidence he killed his wife.

6.       Ken Cusick became collateral damage in her efforts to make his freedom a political football in LaSalle County. She and the other Defendants fabricated evidence, withheld

exculpatory evidence, and initiated criminal proceedings against Ken Cusick despite knowing that he was innocent.

7.      Ken Cusick was fortunate not to be convicted, and he remains deeply grateful to the jury who saved his life. But while that jury saved him from serving time in prison as an innocent man, that jury could not prevent the colossal damage the Defendants' conduct has caused to his life. Thanks to Defendants, Ken Cusick has been immortalized in the public consciousness as a murderer. It destroyed his relationship with his former in-laws and close family members. It subjected him to unwanted attention through "true crime" programming focused on this case. Ken Cusick cannot run errands in Ottawa without encountering the whispers of a community who believes what these Defendants have spread publicly about him.

8.      Plaintiff now bring this action to obtain justice and redress for the injuries Defendants caused him.

**Jurisdiction**

9.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

10.     This Court has jurisdiction over Plaintiff's constitutional claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to this complaint occurred in this judicial district.

**The Parties**

11.     Kenneth Cusick is 53 years old. He is a lifelong resident of LaSalle County. He was a longtime public servant in Ottawa, working for the Ottawa Fire Department for many

years before running his Ottawa family's tavern full time. He is a loving father, husband, and son.

12. At all times relevant to this Complaint, Defendants Gualandri, Cruz, Zielmann, and Unknown Employees of the City of Ottawa and the County of LaSalle (hereinafter "Defendant Officers") were law enforcement officers or otherwise employed by the Ottawa Police Department and/or the County of LaSalle.

13. Defendant Karen Donnelly became the elected LaSalle County State's Attorney on November 8, 2016. Before her election she worked at the law firm of Mueller Anderson & Associates in Ottawa. She is sued in her individual capacity. At all times, she acted under color of law during the relevant events, and since she assumed office with the LaSalle County State's Attorney's Office she acted within the scope of her employment.

14. At all times relevant to this Complaint, Coroner Jody Bernard was the coroner of LaSalle County, Illinois. In that capacity she served as a law enforcement officer. She is sued in her official and her individual capacity. She acted under color of law and within the scope of her employment during the relevant events, including the investigation of the murder at issue. Upon information and belief, as the elected coroner for LaSalle County, Illinois, she was the head of the LaSalle County Coroner's Office (hereinafter the "Coroner's Office").

15. Scott Denton is a forensic pathologist who operates out of Bloomington, Illinois. He was retained by one or more Defendants to assist them in their efforts to frame Kenneth Cusick. At all times relevant to this lawsuit he acted under color of law and within the scope of his contractual arrangement. He is sued in his individual capacity.

16. Rod Englert D/B/A Englert Forensics Consultants, LLC is a retired law enforcement officer who operates a consulting business out of Oregon. He was retained by one

or more Defendants to assist them in their efforts to frame Kenneth Cusick. At all times relevant to this lawsuit he acted under color of law and within the scope of his contractual arrangement. He is sued in his individual capacity.

17.     Julius Ballanco is a plumbing and mechanical engineer who operates out of Munster, Indiana. He was retained by one or more Defendants to assist them in their efforts to frame Kenneth Cusick. At all times relevant to this lawsuit he acted under color of law and within the scope of his contractual arrangement. He is sued in his individual capacity.

18.     Collectively, the Defendant Officers, Donnelly, Bernard, Denton, Englert and Ballanco are referred to herein as the Individual Defendants.

19.     Defendant City of Ottawa (hereinafter the "City") is an Illinois municipal corporation.

20.     Defendant County of LaSalle (hereinafter the "County") is a county in the State of Illinois. It oversees that LaSalle County State's Attorney's Office and Coroner's Office.

21.     The City and/or the County were the employer(s) of each of the Defendant Officers.

### Tracy Cusick's Death and Initial Investigation

22.     In the early morning hours of January 17, 2006, Kenneth Cusick woke up to the unthinkable – he found his wife, Tracy Cusick, unresponsive in their home. Ken tried to help her and called emergency responders. Everyone tried their based to save Tracy, but she was pronounced dead at the hospital. This was the worst day of Ken's life.

23.     Ken and Tracy had been married for almost 8 years when she passed away. They had combined their families into a blended family. Their marriage was a loving and committed one.

24.     Unfortunately, at the time of her death Tracy suffered from personal health problems which brought about her premature death. The initial autopsy into her death reflected those personal health problems and concluded she had died by drowning in the couple's downstairs bathroom.

25.     Ken did not know why his wife had passed, but he wanted answers and he fully cooperated with the Ottawa Police Department and Coroner's Office's investigation into her death.

26.     That initial investigation revealed no evidence that Tracy Cusick was murdered or that Ken Cusick had anything to do with her death.

### Gualandri and the Individual Defendants
### Pursue a Flawed Additional Investigation

27.     After Tracy's death, Ken Cusick mourned her passing, but he committed himself to being a father and to supporting his and Tracy's children however he could.

28.     Dave Gualandri was not a detective during the initial investigation into Tracy's death and he had nothing to do with this initial investigation. In December of 2007, however, he became the Sergeant of Investigations for the Ottawa Police Department, and at that point he was in a position to reopen an investigation into Tracy's death. He did so. That investigation did not reveal any true new information that would assist an investigator, acting in good faith, in determining that she was murdered, much less that Ken Cusick was responsible. In fact, this investigation only confirmed that Tracy Cusick's death was a tragic accident.

29.     Defendants did not accept the answers their investigation revealed. Instead, Gualandri and the other Individual Defendants then entered into a conspiracy to frame Ken Cusick for Tracy's purported murder. The Individual Defendants did so by resorting to fabricating evidence, presenting false information to the Coroner's Inquest and grand jury to

6

obtain an indictment, withholding and concealing exculpatory evidence, and other unlawful acts in an effort to frame Mr. Cusick for a crime he did not commit. This fabricated evidence included false evidence from Denton, Englert and Ballanco purporting to provide evidence that Tracy Cusick was murdered when the Individual Defendants knew that these reports and the information on which they relied were incorrect. At least some of the Defendants, including Denton, have engaged in similar misconduct in an attempt to frame other criminal defendants.

30. These Individual Defendants attempted to convince then-LaSalle County State's Attorney to pursue a case against Kenneth Cusick. Mr. Towne refused to do so.

### Karen Donnelly Eyes Public Office

31. Before her election to the LaSalle County State's Attorney's Office, Karen Donnelly was in close contact with Dave Gualandri about his investigation, and she assisted and conspired with the other Individual Defendants to advance that investigation. It was a goal of the conspiracy to remove Brian Towne from office so that a case against Mr. Cusick could proceed.

32. She saw an opportunity in this investigation to advance her goal of being elected as the LaSalle County State's Attorney, and so without revealing her involvement in this investigation she pursued a campaign that included a promise that she would pursue charges against Kenneth Cusick if elected. Throughout her campaign she publicized the false assertions that there was evidence Tracy Cusick had been murdered and that Ken Cusick should be charged with her murder. She used Mr. Cusick, along with Mr. Towne, as political punching bags to secure her election as LaSalle County State's Attorney.

### Defendants Gualandri, Bernard and Donnelly Defame Kenneth Cusick

33. The Defendants in this case were not satisfied just to continue their malicious investigation and prosecution of Kenneth Cusick in the criminal justice system, they also took

multiple opportunities to defame and degrade him in the LaSalle County community. These incidents include, but are not limited to, the following knowingly false statements made publicly:

      a.    Defendants Gualandri and Bernard gave false interviews to a television program, "Crime Watch Daily" on or about 2016, in which both provided false accounts of their investigation of Mr. Cusick, including falsely reporting that their investigation had concluded that Tracy Cusick was murdered;

      b.    Defendant Donnelly falsely stated on numerous occasions during her State's Attorney campaign before she was elected, including in campaign materials, that Tracy Cusick was murdered and that Tracy Cusick's case had been "solved."

## Criminal Charges are Initiated against Kenneth Cusick

34.    Once Karen Donnelly was elected, her office took this case to the grand jury. Upon information and belief, one or more Individual Defendants presented false, misleading and incomplete information to the grand jury. The Individual Defendants also memorialized false reports, including false opinions, that were used in the decision to pursue a case against Mr. Cusick. Upon information and belief, at the conclusion of his testimony, the grand jury returned an indictment against Mr. Cusick.

## Kenneth Cusick's Arrest and Trial

35.    Kenneth Cusick was arrested and charged with the murder of his wife. He briefly spent time in custody before he was able, with the help of family, to post bond. He was then tried for his wife's murder. At his trial, he was able to present expert evidence demonstrating why the

purported opinions of Denton, Mr. Englert and Mr. Ballanco were false. His defense was able to explain to a jury how his wife passed away.

36.     At this trial, false reports from Gualandri, Cruz, Denton, Englert and Ballanco were used to prosecute Plaintiff for a crime Defendants knew he did not commit.

37.     There was never any probable cause to arrest or prosecute Plaintiff for his wife's purported murder.

38.     The jury that heard this case knew the truth. On December 13, 2019, the jury acquitted Kenneth Cusick.

**City of Ottawa and County of LaSalle's
Policies and Widespread Practices**

39.     The constitutional violations that caused Kenneth Cusick's malicious prosecution and the claims set forth in this Complaint were not isolated events. To the contrary, they were the result of the City of Ottawa's and LaSalle County's policies and widespread practices of pursuing convictions without regard to the truth, through reliance on profoundly flawed investigations that withhold exculpatory evidence and fabricate evidence.

40.     The constitutional violations that caused Kenneth Cusick's malicious prosecution and the claims set forth in this Complaint were the result of the City's and County's policies and widespread practices of failing to adequately train and supervise its police, coroner's and State's Attorney's employees on their obligations not to fabricate evidence, and not to defame the subjects of their investigations.

41.     These constitutional violations were also the result of the City's and County's policies and widespread practices of failing of failing to discipline officers or coroner's employees who withhold exculpatory or impeachment evidence, or who fabricate evidence.

42.     The constitutional violations that caused Kenneth Cusick's malicious prosecution and the claims set forth in this Complaint were also the result of the City's and County's policies and widespread practices of failing to intervene to prevent individual employees from violating citizens' constitutional rights.

43.     In accordance with these policies and widespread practices, City and County employees refused to report misconduct committed by their colleagues, including the misconduct at issue in this case.

44.     The City's and County's failure to train, supervise, and discipline its officers and employees effectively condones, ratifies, and sanctions the kind of misconduct that the Individual Defendants committed against Kenneth Cusick in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's and County's practices and policies, as alleged above.

45.     The City and County and their employees failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Mr. Cusick's ongoing injuries.

46.     The policies and practices described in the foregoing paragraphs were consciously approved by City and County policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

47.     In keeping with these widespread policies and practices, Karen Donnelly, Dave Gualandri, and others involved in framing Ken Cusick also attempted to frame Brian Towne. Karen Donnelly was motivated in her efforts to frame Mr. Towne by a personal vendetta

stemming from Mr. Towne's prosecution of her son, and her own prior failed attempts to become an Assistant State's Attorney while Mr. Towne was the elected LaSalle County State's Attorney.

48.     When Karen Donnelly was elected, she, Gualandri, and others undertook an investigation of Brian Towne in which Donnelly and Gualandri suppressed exculpatory evidence and presented false and fabricated evidence to the grand jury to secure an indictment. Donnelly then pursued a criminal case against Mr. Towne that ended only when a court concluded that Mr. Towne's right to a speedy trial had been violated by Donnelly's delay in bringing the case to trial. As in Mr. Cusick's case, Donnelly and others compounded the harms to Mr. Towne by making false and inflammatory statements to the media about the case.

**Plaintiff's Damages**

49.     Plaintiff Kenneth Cusick spent years of his life waiting for this nightmare to come to an end. He spent years enduring the false statements Donnelly, Gualandri, Bernard and others made about him in the media. He was briefly in custody after his arrest. He was forced to endure the entirety of a criminal trial until a jury would acquit him and he could go home.

50.     Following his acquittal, Mr. Cusick was not simply able to resume his normal life. He will be forever known in LaSalle County, the place he lived his entire life, as a person who murdered his wife. Some friends and even family members have been turned against him as a result. This is a false an unfair characterization he will never be able to shed thanks to the Individual Defendant's conduct. It remains extremely difficult for Mr. Cusick to life his life and travel anywhere in LaSalle County and beyond without people recognizing him and assuming that the things the Individual Defendants have accused him of are true. Mr. Cusick has gone from a person who enjoyed participating in his community to a person who rarely leaves his home other than to go to work.

51.     Because of Defendants' conduct, Mr. Cusick retired as an Ottawa firefighter. Business at his family's tavern suffered as a result of the ignominy in which Defendants have placed his name in LaSalle County. He also incurred significant personal expense in defending himself in the criminal justice system against these false charges.

52.     Additionally, the emotional pain and suffering caused by this multi-year ordeal, specifically by the ordeal of being charged with killing one's wife and the mother of one's children, has been substantial. During his pretrial detention, Mr. Cusick was briefly stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. Beyond that, Mr. Cusick has suffered extreme emotional and physical harms including but not limited to anxiety, stress, depression, fear, and loneliness.

53.     As a result of the foregoing, Plaintiff Kenneth Cusick has suffered tremendous damage, including physical sickness and injury, and emotional damages, all caused by the Individual Defendants' misconduct.

## COUNT I
### 42 U.S.C. § 1983 – Due Process
### Fourteenth Amendment

54.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

55.     As described in detail above, the Defendants, while acting individual, jointly, and in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial and his right not to be wrongfully convicted and imprisoned.

56.     In the manner described more fully above, Defendants manufactured evidence and solicited false evidence—including false witness statements, and false witness testimony that they knew to be false. Defendants also fabricated reports falsely implicating Plaintiff in his wife's death.

57.     Defendants obtained Plaintiff's prosecution using this false evidence, and they failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff.

58.     In addition, Defendants deliberately withheld exculpatory evidence from prosecutors, Plaintiff, and Plaintiff's criminal defense attorneys, including evidence that Defendants had manufactured evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

59.     In addition, based upon information and belief, the Defendants concealed, fabricated, and destroyed additional evidence that is not yet known to Plaintiff.

60.     The Defendants' misconduct resulted in the unjust and wrongful criminal prosecution of Plaintiff and the deprivation of Plaintiff's liberty, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not have and would not have been pursued.

61.     The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

62.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered serious physical injury, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

63.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Ottawa and the County of LaSalle in the manner more fully described below in Count V.

**COUNT II**
**42 U.S.C. § 1983 – Unlawful Detention**
**Fourth and Fourteenth Amendments**

64.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

65.     In the manner described more fully above, the Defendants, individually, jointly, and each in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.

66.     In so doing, these Defendants caused Plaintiff to be deprived of his liberty without probable cause and subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

67.     The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

68.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered serious physical injury, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

69.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Ottawa and the County of LaSalle, in the manner more fully described below in Count V.

## COUNT III
### 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights

70.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

71.     In the manner described more fully above, the Defendants, individually, jointly, and each in conspiracy with one or more persons, known and unknown, reached an agreement among themselves to fabricate evidence and to detain, prosecute, and convict Plaintiff for the purported murder of his wife, regardless of Plaintiff's guilt or innocence, and thereby to deprive him of his constitutional rights.

72.     In so doing, these co-conspirators agreed to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

73.     In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

74.     The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

75.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT IV
### 42 U.S.C. § 1983 – Failure to Intervene

76.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

77.     In the manner described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so.

78.     The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

79.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered serious physical injury, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

80.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Ottawa and the County of LaSalle, in the manner more fully described below in Count V.

## COUNT V
### 42 U.S.C. § 1983 – Policy and Practice Claim against
### the City of Ottawa and County of LaSalle

81.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

82.     As described in detail above, the City of Ottawa and the County of LaSalle are liable for the violation of Plaintiff's constitutional rights because Plaintiff's injuries were caused by the policies, practices, and customs of the City of Ottawa and the County of LaSalle as well as by the actions of policy-making officials for the City and County.

16

83.     At all times relevant to the events described in this Complaint and for a period of time prior thereto, the City and County had notice of a widespread practice by their officers and agents of manufacturing false evidence, suppressing evidence, and instigating false criminal charges, including the falsification of statements and reports, fabricating false evidence to implicate defendants in criminal conduct, failing to maintain or preserve evidence, and pursuing wrongful convictions through profoundly flawed investigations.

84.     These widespread practices, individually and together, were allowed to flourish because the leaders, supervisors, and policymakers of the City and County directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control their officers, agents, and employees and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiff.

85.     The above widespread practices and customs, so well settled as to constitute *de facto* policies of the City and County, were able to exist and thrive, individually and together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

86.     At all times relevant to the events described in this Complaint and for a period of time prior and subsequent thereto, the City and County failed to promulgate proper or adequate rules, regulations, policies, and procedures for the collection, documentation, preservation, testing, and disclosure of evidence; the writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and maintenance of investigative files and disclosure of those files in criminal proceedings. In addition or alternatively, the City and County failed to promulgate proper and adequate rules, regulations, policies, and procedures for

the training and supervision of officers and agents of the Chicago and County, with respect to these subjects.

87.     These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by officers and agents of the City and County.

88.     In addition, the misconduct described in this Count was undertaken pursuant to the policies and practices of the City and County in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City and County or were actually committed by persons with such final policymaking authority.

89.     As a result of the policies and practices of the City and County, numerous individuals have been wrongly prosecuted and imprisoned for, as well as convicted of, crimes that they did not commit.

90.     Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the City and County , including but not limited to the individually named Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

## COUNT VI
## State Law – Malicious Prosecution

91.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

92.     In the manner described more fully above, the Defendants, individually, jointly, under color of law and within the scope of their employment, and each in conspiracy with one or more persons, known and unknown, and, in the case of the Defendant Officers, pursuant to

City's and County's policies and widespread practices, deprived Plaintiff of his constitutional rights. These acts violated Plaintiff's rights under Illinois law.

93.     In so doing, the Defendants caused Plaintiff to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of his innocence.

94.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

95.     As a result of the misconduct of the Defendants described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VII
## State Law – Defamation

96.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

97.     In the manner described more fully above, the Defendants, individually, jointly, under color of law and within the scope of their employment, and each in conspiracy with one or more persons, known and unknown, and, in the case of the Defendant Officers, pursuant to City's and County's policies and widespread practices, made or caused to be made statements to others that imputed that Kenneth Cusick had murdered his wife.

98.      At the time Defendants made these statements or caused them to be made, they knew they were false and lacked reasonable grounds.

99.     As a result of these statements, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT VIII**
**State Law – Defamation**
**Intentional Infliction of Emotional Distress**

100.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

101.     In the manner described more fully above, by fabricating false evidence against Plaintiff, maliciously prosecuting him, withholding exculpatory and impeaching evidence from him, and defaming him, the Individual Defendants engaged in extreme and outrageous conduct.

102.     Defendants' actions set forth above were rooted in an abuse of power or authority.

103.     Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

104.     Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others.

105.     The misconduct described in this Count was undertaken by the Individual Defendants within the scope of their employment and under color of law such that the City and/or County may be held liable.

106.     As a result of these statements, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT IX
## Illinois Law – Willful and Wanton Conduct

107.    Each of the Paragraphs of this Complaint is incorporated as if restated fully
herein.

108.    At all times relevant to this complaint the Defendants had a duty to refrain from
willful and wanton conduct in connection with the investigation in this case.

109.    Notwithstanding that duty, the Defendants acted willfully and wantonly through
course of conduct that showed an utter indifference to, or conscious disregard of, Plaintiff's
rights.

110.    As a result of the Defendants' misconduct described in this Count, Plaintiff
suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional
pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT X – State Law
## Civil Conspiracy

111.    Each of the Paragraphs of this Complaint is incorporated as if restated fully
herein.

112.    As described more fully in the preceding paragraphs, the Defendants, acting in
concert with other co-conspirators, known and unknown, reached an agreement among
themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to
accomplish an unlawful purpose and/or to achieve a lawful purpose by unlawful means. The
Defendants also reached an agreement among themselves to cover up and provide false
justification for the unlawful shooting of Plaintiff. In addition, these co-conspirators agreed
among themselves to protect one another from liability for depriving Plaintiff of these rights.

113.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

114.    The violations of Illinois law described in this complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were accomplished by Defendants' conspiracy.

115.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

116.    As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT XI – State Law**
***Respondeat Superior***

117.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

118.    In committing the acts alleged in the preceding paragraphs, Defendant Officers were employees, members, and agents of the City and/or County acting at all relevant times within the scope of their employment.

119.    Defendant City of Ottawa and County of LaSalle are liable as principal for all torts committed by its agents.

## COUNT XII – State Law
### Indemnification

120.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

121.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

122.    Defendant Officers are or were employees of the City and/or County, who acted within the scope of their employment in committing the misconduct described above.

123.    The City and County are therefore obligated to pay any judgment entered against their respective employees in this case.

124.    Plaintiff therefore demands judgment against Defendant City of Ottawa and County of LaSalle, in the amounts awarded to Plaintiff against the Individual Defendants as damages, attorneys' fees, costs and interest.

WHEREFORE, Plaintiff Kenneth Cusick respectfully requests that this Court enter a judgment in his favor and against Defendants Dave Gualandri, Scott Cruz, Brian Zielmann, Karen Donnelly, Jody Bernard, the City of Ottawa, the County of LaSalle, Scott Denton, Rod Englert D/B/A Englert Forensics Consultants, LLC, Julius Ballanco, and Unidentified Employees of the City of Ottawa and the County of LaSalle awarding compensatory damages and attorneys' fees and costs against each Defendant, punitive damages against each of the Individual Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Kenneth Cusick hereby demands a trial by jury pursuant to Federal Rule of Civil

Procedure 38(b) on all issues so triable.

Respectfully submitted,

**KENNETH CUSICK**


BY:     /s/ Jon Loevy_____
        *One of Plaintiff's Attorneys*

Jon Loevy
Tara Thompson
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900