## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Kenneth Cusick, | |
| Plaintiff, | |
| | Case No. 20-cv-06017 |
| v. | |
| | Judge Mary M. Rowland |
| Dave Gualandri, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Cusick brings state and federal claims against several defendants associated with or employed by the City of Ottawa and the County of LaSalle. He alleges that the defendants engaged in a conspiracy to frame him for the murder of his wife. The defendants have each moved to dismiss the Complaint. For the reasons stated herein, the motions to dismiss [41, 42, 44, 50, 55, 61] are granted in part and denied in part.

### I.    Background

The following factual allegations are taken from Cusick's Complaint (Dkt. 1 ("Compl.")) and are accepted as true for the purposes of the motions to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). This summary focuses on the allegations most relevant to the present motions.

Cusick is a resident of LaSalle County. Compl., ¶ 11. For the relevant time, Defendants Dave Gualandri, Scott Cruz, and Brian Zielmann were all law enforcement employees of the Ottawa Police Department or the County of LaSalle.

*Id.* at ¶ 12.[1] Defendant Karen Donnelly is a lawyer who was elected LaSalle County State's Attorney on November 8, 2016. *Id.* at ¶ 13. Defendant Jody Bernard was the Coroner for LaSalle County. *Id.* at ¶ 14. Defendant Scott Denton is a forensic pathologist based in Bloomington, Illinois, who worked on the investigation of Cusick. *Id.* at ¶ 15. Defendant Rod Englert is a retired police officer living on Oregon. *Id.* at ¶ 16. He operates a consulting business and also worked on the investigation. *Id.* Defendant Julius Ballanco, a mechanical engineer in Munster, Indiana, was similarly involved. *Id.* at ¶ 17. Finally, Defendants City of Ottawa and LaSalle County are both located in Illinois. *Id.* at ¶¶ 19-20.

On January 17, 2006, Cusick found his wife Tracy unresponsive in their home. *Id.* at ¶ 22. She was taken to the hospital, where she was pronounced dead. *Id.* The initial autopsy concluded that she had drowned in the bathtub due to underlying health issues. *Id.* at ¶ 24. An initial investigation by Ottawa police uncovered no evidence suggesting that Tracy was murdered or that Cusick was involved in her death. *Id.* at ¶¶ 25-26.

In December of 2007, Gualandri became Sergeant of Investigations of the Ottawa Police Department. *Id.* at ¶ 28. He used the authority of the new position to reopen the investigation into Tracy's death. *Id.* This new investigation did not uncover any new information suggesting that Cusick was responsible for his wife's death. *Id.* Accordingly, Brian Towne, the LaSalle County State's Attorney, refused to pursue charges against Cusick. *Id.* at ¶ 30.

---

[1] Generally the Court will refer generically to "Defendants" in this opinion although where appropriate will refer to "Officer Defendants" for Gualandri, Cruz, and Zielmann.

2

Gualandri, however, did not accept this conclusion and, instead, conspired with the other defendants to frame Cusick for Tracy's murder. *Id.* at ¶ 29. To that end, the defendants fabricated evidence, presented false testimony, and withheld exculpatory evidence. *Id.* Donnelly, who was a part of the conspiracy, was also campaigning to unseat Towne as State's Attorney. *Id.* at ¶ 31. She used Tracy's death as a campaign issue, promising that she would pursue charges against Cusick. *Id.* at ¶ 32.

After Donnelly was elected, her office presented the case to the grand jury. *Id.* at ¶ 34. The jury, relying in part on false testimony offered by the defendants, returned an indictment against Cusick. *Id.* at ¶¶ 29, 34. He was arrested, charged, and briefly held in custody until he posted bond on March 3, 2017. *Id.* at ¶ 35; Dkt. 61-2. At trial, the prosecution relied on the false reports prepared by the defendants. *Id.* at ¶ 36. Nevertheless, Cusick was acquitted by a jury on December 13, 2019. *Id.* at ¶ 38. Following his acquittal, Cusick filed the present suit on October 8, 2020.

## II.    Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts

plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

## III.   Analysis

Cusick brings five federal claims under 42 U.S.C. § 1983. He asserts that the defendants' creation and use of false evidence violated his Fourteenth Amendment due process right to a fair trial; that he was unlawfully detained in violation of the Fourth and Fourteenth Amendments; that the defendants conspired to violate his constitutional rights; that they failed to intervene to prevent the violations; and that the violations were the result of policies and practices of Ottawa and LaSalle County. Cusick also brings claims under Illinois law for malicious prosecution, defamation

4

and intentional infliction of emotional distress (IIED). Defendants raise a number of arguments, including that they are entitled to immunity, that Cusick's claims are time barred, and that the Complaint lacks sufficient detail.

## A. Group Pleading, Specificity of Allegations, and Acting Under Color of State Law

The Court first addresses Defendants' argument about Cusick's "group pleading", the sufficiency of his allegations and that they did not act "under color of state law". Defendants argue that the complaint does not provide specific enough allegations about each defendant. "[G]roup pleading does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Lattimore v. Vill. of Streamwood*, 2018 WL 2183991, at *4 (N.D. Ill. May 11, 2018) (cleaned up); *see also Hill v. Cook Cty.*, 463 F. Supp. 3d 820, 836 (N.D. Ill. 2020) ("an allegation directed at multiple defendants can be adequate to plead personal involvement.") (cleaned up). The Court finds that Cusick adequately put Defendants on notice of the claims against them.

For example Ballanco faults Cusick for failing to identify "what if any statement or statements from Mr. Ballanco's report or testimony were false." Dkt. 55 at 13. However Cusick alleged that the "fabricated evidence included false evidence from Denton, Englert and Ballanco purporting to provide evidence that Tracy Cusick was murdered when the Individual Defendants knew that these reports and the information on which they relied were incorrect." Compl. ¶29. Bernard complains that there are no specific allegations against her. The Court agrees the allegations against the Coroner are sparse, but Cusick alleges that false information was

5

presented "to the Coroner's Inquest." *Id*. at ¶¶29, 34. A reasonable inference is that Bernard's report contained false information in it. Nothing more is required at the pleading stage. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (court accepts as true all well-pleaded facts and draws all reasonable inferences in plaintiff's favor); *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir.), cert. denied, 141 S. Ct. 251, 208 L. Ed. 2d 24 (2020) (the court gives "no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint.").

Next, several Defendants argue that they did not act "under color of law". "Private persons are considered state actors—that is, they are deemed to have acted under color of state law and thus face § 1983 liability—in certain limited circumstances." *Camm v. Faith,* 937 F.3d 1096, 1105 (7th Cir. 2019) (finding defendant Englert "easily qualif[ied] as [a] state actor" when he was hired to investigate the crime scene on behalf of Indiana law enforcement and county prosecutors controlled his actions); *see also Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 281 (7th Cir. 1986) ("[a] private defendant acts 'under color of' state law for purposes of Section 1983 when he is 'a willful participant in joint action with the State or its agents.'") (citations omitted). This is "necessarily a factbound inquiry." *Morfin v. City of E. Chicago*, 349 F.3d 989, 1003 (7th Cir. 2003). *See also Liebich v. DelGiudice*, 2021 WL 1103346, at *5 (N.D. Ill. Mar. 22, 2021) (declining to dismiss claims based on argument that experts were not acting under color of state law). The Court will not dismiss any claims on this basis at this pleading stage.

**B. Fourteenth Amendment Due Process Claim (Count I)**

In Count I, Cusick alleges that the defendants deprived him of a fair trial by manufacturing false evidence and false witness statements and withholding exculpatory information in violation of the Fourteenth Amendment's due process clause. Defendants argue that this claim must be dismissed because Cusick was acquitted. As the Seventh Circuit explained in *Bianchi v. McQueen,* a plaintiff's acquittal forecloses a due-process claim, 818 F.3d 309, 319-20 (7th Cir. 2016), and in *Alexander v. McKinney*, "[i]t would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of the trial is to *effectuate* due process." 692 F.3d 553, 557 (7th Cir. 2012) (emphasis in original). *See also Holmes v. Curran*, 2018 WL 2933648, at *2 (N.D. Ill. June 12, 2018) ("But even when the prosecution uses fabricated evidence at trial, the defendant's due process claim is wiped away if he is released on bond and then acquitted."); *Cuevas v. Hernandez*, 2021 WL 1165093, at *4 (N.D. Ill. Mar. 26, 2021) (same). Cusick relies on *Hill*, 463 F. Supp. 3d 820, but that case did not involve an acquittal. And the holding of *McDonough v. Smith,* 139 S. Ct. 2149 (2019) was about the statute of limitations rather than the merits of a Fourteenth Amendment due process claim. Cusick does not cite any authority that Seventh Circuit precedent set forth in *Bianchi* or *Alexander* has been overruled.[2]

Count I is dismissed. For the other surviving claims, discussed below, they proceed to the extent they are not based on an unfair trial due-process claim.

---

[2] To the extent Count I is construed as a §1983 malicious prosecution claim, it would be dismissed as well. *See Sanchez v. Vill. of Wheeling*, 447 F. Supp. 3d 693, 706 (N.D. Ill. 2020).

### C. Unlawful Detention Claim (Count II)

#### *1. The claim as pled will proceed*

Count II alleges unlawful pretrial detention in violation of the Fourth and Fourteenth Amendments. In *Lewis v. City of Chicago*, 914 F.3d 472, 475, 478 (7th Cir. 2019), the Seventh Circuit relied on *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 197 L. Ed. 2d 312 (2017) ("*Manuel I*"), to hold that the "Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention." ("a § 1983 claim for unlawful pretrial detention rests *exclusively* on the Fourth Amendment.") (emphasis in original). Cusick acknowledges *Lewis* but argues that the Supreme Court's decision in *McDonough* has upset that precedent. In *McDonough*, the Court assumed without deciding that pretrial confinement can serve as a deprivation of liberty under the Due Process Clause. 139 S. Ct. at 2155. The Court explicitly declined to offer an opinion on this assumption, limiting itself to the statute of limitations issue on which it had granted certiorari. *Id.* Since *McDonough*, the Seventh Circuit has affirmed its holding in *Lewis* without necessarily requiring an analysis of *McDonough. See Kuri v. City of Chicago, Illinois*, 990 F.3d 573 (7th Cir. 2021); *Young v. City of Chicago*, 987 F.3d 641 (7th Cir. 2021); *Camm*, 937 F.3d at 1111 (discussing *McDonough* in the context of statute of limitations); *Anderson v. City of Rockford*, 932 F.3d 494 (7th Cir. 2019).

This Court acknowledges the uncertain viability of a Fourteenth Amendment unlawful detention claim in this Circuit, and that district courts here are divided about how to handle these claims. However this Court agrees with other district

courts that have declined to dismiss on the pleadings a Fourteenth Amendment unlawful detention claim brought in conjunction with a Fourth Amendment claim.

In *Treadwell v. Salgado,* 2021 WL 3129290, at *3 (N.D. Ill. July 23, 2021), the court was persuaded that dismissal of the Fourteenth Amendment claim was not warranted "as discovery on the plaintiff's Fourth Amendment claim would be coextensive with discovery on any claim that his detention violated due process under the Fourteenth Amendment." Relying on *Mack v. City of Chicago,* 2020 WL 7027649, at *3 (N.D. Ill. Nov. 30, 2020) (Pallmeyer, J.) (declining dismissal of Fourteenth Amendment due process claim that shared same factual underpinning as Fourth Amendment claim), and *Culp v. Flores,* 454 F.Supp.3d 764, 770 (N.D. Ill. Apr. 15, 2020) (Feinerman, J.) (acknowledging *Lewis* but concluding that Seventh Circuit "does not conclusively answer whether Culp has a viable Fourteenth Amendment claim. Resolving that very difficult question would have no impact on this case at this juncture because, regardless of its answer, the case will remain in federal court (as the Fourth Amendment claim survives), and because discovery on the Fourth and Fourteenth Amendment claims will be coextensive"), the *Treadwell* court explained:

> Defendants argue that the more recent Seventh Circuit case of *Young* should bind this Court and that both *Mack* and *Culp* are non-binding. Defendants are right: it is a fundamental principle that this Court is bound by Seventh Circuit precedent and not [by] other district courts. However, while *Young* reaffirmed *Lewis*, it did not discuss the question left open about the availability of relief for unlawful pretrial detention in *McDonough*. Both [*Culp*] and [*Mack*] confronted *Lewis* and acknowledged that they are bound by the Seventh Circuit. However, given the difficult nature of the question, the Court need not resolve whether a claim under the Fourteenth Amendment is indeed viable.

2021 WL 3129290, at *3. *See also Wright v. City of Chicago*, 2021 WL 736234, at *2 (N.D. Ill. Feb. 25, 2021) (Coleman, J.) (same). *But see, Cruz v. City of Chicago*, 2021 WL 2645558, at *10 (N.D. Ill. June 28, 2021) (Seeger, J.) ("It would be strange to read *McDonough* as blessing the existence of a due process claim, after the Supreme Court said that it was not addressing the existence of a due process claim."); *Henderson v. Rangel*, 2020 WL 5642943, at *3 (N.D. Ill. Sept. 21, 2020) (Durkin, J.) (citation omitted) (dismissing Fourteenth Amendment claim stating the assumption in *McDonough* "seems to create some friction with the Seventh Circuit's view that a wrongful pretrial detention claim can be only be brought under the Fourth Amendment. But this Court cannot disregard the Seventh Circuit's pronouncement in *Lewis* based on the [Supreme] Court's assumption—rather than holding—that such a claim is viable.").

Considering the allegations in this case and having reviewed the parties' briefs and the case authority, the Court believes the better course in this case is to allow the claims to proceed as pled. The requests to dismiss the Fourteenth Amendment claim in Count II is denied.

### 2. *The statute of limitations and grand jury indictment*

Cusick alleges that Defendants "initiate[d], continue[d], and perpetuate[d] judicial proceedings against [him] without any probable cause for doing so and in spite of the fact that they knew [he] was innocent." Compl. ¶ 65. Defendants argue that the unlawful detention claim is untimely.

The parties agree that "[a]lthough state law determines the length of the statute of limitations for a § 1983 claim, federal law provides when that limitations period begins." *Smith v. City of Chicago*, 3 F.4th 332, 335 (7th Cir. 2021). In Illinois, there is a two-year statute of limitations for § 1983 claims, measured from the time the claim accrued. *See Woods v. Illinois Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 766 (7th Cir. 2013). "[T]he threshold inquiry in a § 1983 suit, [] requires courts to 'identify the specific constitutional right' at issue." *Manuel I*, 137 S. Ct. at 920. Accrual dates for § 1983 claims "are governed by federal rules conforming in general to common-law tort principles" and under those principles, "claims accrue when a plaintiff has a complete and present cause of action." *Savory*, 947 F.3d at 414 (cleaned up).

Cusick filed this lawsuit on October 8, 2020. He contends that his claim accrued on December 13, 2019, when he was acquitted at trial. This would put him comfortably within the statute of limitations. The defendants, meanwhile, assert that the clock started running on March 3, 2017, when Cusick posted bond and was released from pretrial detention. In that case, Cusick's claim would be untimely.

Defendants argue that the Seventh Circuit's recent decision in *Smith*, 3 F.4th 332 controls. Smith was arrested in 2013, detained for seven months, released on bond in 2014, and acquitted in 2016. He filed suit in 2018, bringing an unlawful pretrial detention claim. *Id*. at 333-34. Smith alleged that "the officers violated § 1983 by using fabricated evidence to place him in custody in violation of the Fourth Amendment." *Id*. at 334. The Seventh Circuit held that his claim accrued upon his release from custody and therefore was untimely. *Id*. at 340. The Court identified the

"contours of the constitutional right" of Smith's claim—the "wrong…is the detention rather than the existence of criminal charges." *Id*. at 338 (citation omitted). *Smith* distinguished *McDonough*, 139 S. Ct. 2149, which held that a § 1983 fabrication of evidence claim accrued upon acquittal. Smith's claim could "be separated from his overall prosecution"; indeed the allegedly fabricated evidence in his case "was *not* used at his trial, and nothing in his complaint suggests that it was." *Id*. (emphasis added). The Seventh Circuit explained that "[a] due process claim attacks the whole prosecution, while the Fourth Amendment claim—whether about a search, arrest, or pretrial detention—can *sometimes* be severed from the rest of the prosecution." *Id*. at 339-40 (emphasis added).

*Smith* is easily distinguishable from the allegations in the present case. Count II "attacks the whole prosecution".  Unlike in *Smith*, where Plaintiff alleged only that officers used fabricated evidence to place him in custody, Cusick alleges that Defendants fabricated evidence and presented false information to the grand jury to obtain an indictment *and* at his trial to convict him. Compl. ¶¶ 29, 34, 36 ("false reports from Gualandri, Cruz, Denton, Englert and Ballanco were used to prosecute [him] for a crime Defendants knew he did not commit."). *See McDonough*, 139 S. Ct. at 2156 (where fabricated evidence presented to secure indictment *and* at two trials, the Court held "McDonough could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution.").[3]

---

[3] The *McDonough* Court explained the "favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments" and it "track[s] similar concerns for finality and consistency that have motivated this Court to refrain from

In *Savory v. Cannon*, 2021 WL 1209129, at *6 (N.D. Ill. Mar. 31, 2021), on remand from the Seventh Circuit, the court explained that "*McDonough* makes clear that a plaintiff must wait until the favorable termination of the criminal proceedings to bring a § 1983 claim that, if successful, would be incompatible with his guilt." The plaintiff in *Savory* challenged the integrity of the criminal prosecution itself, and the court found his Fourth Amendment claim timely because it did not accrue until his pardon by the Governor—9 years after his release from prison. *Id*. Here, a fair reading of the complaint shows Cusick challenges the integrity of the whole prosecution. His claim did not accrue until he was acquitted on December 13, 2019.

Defendants also argue that the grand jury indictment forecloses an element of Cusick's unlawful detention claim—lack of probable cause. They rely on *Bontkowski v. United States*, 28 F.3d 36 (7th Cir. 1994), that recognized a grand jury indictment is prima facie evidence of probable cause in Illinois. But that case is distinguishable because plaintiff there *pled guilty* to the offense, and the Seventh Circuit stressed that "an action for malicious prosecution will not lie if the prior criminal proceedings terminated in any manner" indicative of plaintiff's guilt. *Id*. at 37.[4] At this pleading stage, the Court will not make a finding about the existence of probable cause. *See Engel v. Buchan*, 791 F. Supp. 2d 604, 611 (N.D. Ill. 2011) (denying motion to dismiss and explaining that "[w]hile a criminal indictment or conviction is prima facie

---

multiplying avenues for collateral attack on criminal judgments through civil tort vehicles such as § 1983." 139 S. Ct. at 2157.

[4] *See also Phillips v. City of Chicago*, 2018 WL 1309881, at *27-28 (N.D. Ill. Mar. 13, 2018) (distinguishing *Bontkowski* and declining to grant summary judgment based on contention that there was probable cause for plaintiff's prosecution).

evidence of probable cause, it may be rebutted by evidence that it was obtained fraudulently.").

Count II is timely filed and the requests to dismiss based upon the grand jury indictment are denied.

## D. Federal and State Law Conspiracy Claims (Counts III and X)

Defendants argue that the conspiracy claims should be dismissed because the allegations are conclusory. "To establish conspiracy liability in a § 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). "There is no heightened pleading standard for conspiracy claims: It is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Sanchez*, 447 F. Supp. 3d at 705 (cleaned up).

Cusick alleges that Defendants "collectively decided to frame [him] for causing his wife's death despite what the facts showed" and "would not accept Towne's judgment [that there was no case to bring against Cusick], and conspired with Karen Donnelly, who had aspirations to run for State's Attorney, and involved her in their investigation." Compl. ¶¶2, 4. Cusick claims that although the initial investigation after his wife's death in 2006 revealed no evidence that he was involved, when Gualandri became Sergeant of Investigations in 2007, he decided to re-open the investigation, and this was in conjunction with Donnelly eyeing the State's Attorney

position. *Id*. at ¶¶26, 28, 31, 32. Defendants "attempted to convince then-LaSalle County State's Attorney to pursue a case against [] Cusick." *Id*. at ¶30. When Towne declined, Defendants' goals were to remove then State's Attorney Towne from office "so that a case against Mr. Cusick could proceed," and to further Donnelly's agenda to be elected State's Attorney. *Id*. at ¶¶31-32. Defendants conspired to frame Cusick for his wife's murder by "fabricating evidence, presenting false information to the Coroner's Inquest and grand jury to obtain an indictment, [and] withholding and concealing exculpatory evidence." *Id*. at ¶29.

Drawing all reasonable inferences in his favor, Cusick's conspiracy claims are sufficiently pled. As the described allegations show, Cusick identifies the parties involved, the general purpose, and approximate dates of the conspiracy. *See Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) ("Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy."); *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133, 720 N.E.2d 242, 258 (1999) (a civil conspiracy claim under Illinois law requires a plaintiff to "allege an agreement and a tortious act committed in furtherance of that agreement"). As evident from his complaint, Cusick's conspiracy claim spans multiple years, starting when the investigation was re-opened in 2007 until the end of his trial 2019. The Court does not agree with Englert and Denton that their roles in the conspiracy are not clear from the complaint or that they had no role in the alleged wrongful conduct. Cusick alleges that they were retained by Defendants, provided false evidence that Tracy was murdered, and their reports were used both to pursue the investigation against Cusick and at his

trial. Compl. ¶¶15, 16, 29, 36. Cusick may be unable to prove that individual defendants were involved in the conspiracy, but that is not the question at this pleading stage. *See Bilek*, 8 F.4th at 585 ("we cannot expect, nor does Federal Rule of Civil Procedure 8 require, a plaintiff to plead information [ ]he could not access without discovery"); *see also Sanchez*, 447 F. Supp. 3d at 705 (no heightened pleading standard for conspiracy claims).

Defendants argue that because any alleged overt act in furtherance of the conspiracy occurred prior to Cusick's indictment in February 2017, this claim is time-barred. (Dkt. 45). Generally a plaintiff need not anticipate statute of limitations affirmative defenses in his complaint. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009). Cusick's civil conspiracy claim is timely because Count II accrued when he was acquitted in December 2019. *See Moore v. City of Chicago*, 2020 WL 3077565, at *6 (N.D. Ill. June 10, 2020) (applying one-year statute of limitations to civil conspiracy claims and finding that like the other claims his conspiracy claims, relying on allegations of fabricated evidence, did not accrue until his criminal charges were dismissed). Defendants also argue that the state law conspiracy claim is duplicative of the federal conspiracy claim and other state law claims. The Court declines to dismiss on this ground. *See Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) ("Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint."). As one court explained recently, there is "no restriction on the number of legal theories one may advance to support a claim for relief" and while

"pleading multiple theories in support of the same claim does not entitle a plaintiff to multiple recoveries," "a plaintiff may be entitled to recover damages for his injuries under more than one legal theory." *Wightman v. Wauconda Twp. Highway Dep't*, 2021 WL 534668, at *4 (N.D. Ill. Feb. 12, 2021). *See also Moore*, 2020 WL 3077565, at *6 (rejecting similar argument by defendants because "[c]ivil conspiracy 'simply represents an alternative theory of liability.'").

The conspiracy claims survive.

### E. Failure to Intervene (Count IV)

Cusick also brings a § 1983 failure to intervene claim. "To prevail on a failure-to-intervene claim, [plaintiff] must prove that Defendants (1) had a reason to know that a fellow officer committed a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the harm from occurring." *Hill*, 463 F. Supp. 3d at 840 (cleaned up). Cusick alleges that "Defendants stood by without intervening to prevent the violation of [his] constitutional rights, even though they had the duty and the opportunity to do so." Compl. ¶77.

Englert and Denton argue the lack of allegations about their involvement or opportunity to intervene. Donnelly relies on case law not decided at the pleading stage. *Yang v. Hardin*, 37 F.3d 282, 283 (7th Cir. 1994) (deciding § 1983 claim as a matter of law after entry of default).[5] Defendants' factual arguments may prove true at a later stage of the litigation, but dismissal now is not warranted. Count IV survives.

---

[5] Similarly it is not clear why Englert relies on *Leaf v. Shelnutt*, 400 F.3d 1070 (7th Cir. 2005). *Leaf* did not involve an expert consultant and was decided on summary judgment.

**F. *Monell* Claim**

Cusick alleges that the City and County had a "widespread practice by their officers and agents of manufacturing false evidence, suppressing evidence, and instigating false criminal charges, including the falsification of statements and reports, fabricating false evidence to implicate defendants in criminal conduct, failing to maintain or preserve evidence, and pursuing wrongful convictions through profoundly flawed investigations." Compl. ¶83.

To state a *Monell* claim, plaintiff must "plead factual content that allows the court to draw the reasonable inference that the [municipality] maintained a policy, custom, or practice" that caused the alleged constitutional deprivation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). *Monell* claims are not subject to a heightened pleading standard. *See White v. City of Chicago*, 829 F.3d 837, 843–44 (7th Cir. 2016). Cusick has sufficiently stated a *Monell* claim. And because the Court has found that Cusick's Fourth Amendment claim is not time-barred, there is no basis to find his *Monell* claim time-barred at this stage.[6]

Defendant LaSalle County argues that to the extent that Cusick seeks to hold the County liable for the conduct of the State's Attorney, the State's Attorney is not a county official. The Court agrees. However, the County Coroner is a named defendant and it appears Englert and Ballanco were retained by the County. The *Monell* claim against LaSalle County survives.

---

[6] Defendants also raise an issue about a potential inconsistent verdict: that the merits of the *Monell* claim would conflict with a finding that the officers are not liable. This is not a reason to dismiss the *Monell* claim.

The motions to dismiss the *Monell* claim are denied.

### G. Malicious Prosecution (Count VI)

In Illinois the elements of malicious prosecution are: "(1) the commencement or continuance by the defendant of an original judicial proceeding against the plaintiff; (2) termination of the original proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice; and (5) special damages." *Grundhoefer v. Sorin*, 2014 IL App (1st) 131276, ¶ 11, 20 N.E.3d 775, 780 (2014). As the Illinois Supreme Court stated recently:

> Liability for malicious prosecution extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present…the significant-role determination must include those persons who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct that was instrumental in the commencement or continuation of the criminal prosecution.

*Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 79, reh'g denied (Sept. 27, 2021) (cleaned up).

Cusick alleges that Defendants caused him to be wrongfully seized and subjected to judicial proceedings for which there was no probable cause, and these proceedings were instituted and continued maliciously, injuring him even though they were ultimately terminated in his favor. Compl. ¶93. Drawing reasonable inferences in Cusick's favor, the complaint sufficiently alleges a malicious prosecution claim and shows that the individual defendants had a significant role in his prosecution. *See Harris v. Wainscott*, 2019 WL 1995270, at *3 (N.D. Ill. May 5, 2019) (rejecting argument that absence of probable cause not sufficiently pled because complaint

"taken as a whole sufficiently alleges that there was no viable legal basis for the criminal charges against [plaintiff]"). Defendants' factual arguments challenging this claim can be made at a later stage.[7] Count VI survives.

### H. Defamation (Count VII)

The Court agrees with Defendants that Cusick's defamation claim is time-barred. "Illinois imposes a one-year statute of limitations on all defamation actions that begins to run when the defamatory statement was published." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 923 (7th Cir. 2003) (citation omitted); *see also* 735 ILCS 5/13-201. Cusick argues that his state law claims could not accrue until the conclusion of his criminal case. However it is clear from his complaint that his defamation claim is not dependent on the resolution of his criminal case. Cusick alleges that Defendants, in addition to their wrongful investigation and prosecution, "also took multiple opportunities to defame and degrade him in the LaSalle County community." Compl. ¶ 33. Specifically, he states that Gualandri and Bernard gave false interviews to a television program in 2016, and Donnelly made numerous false statements during her State's Attorney campaign before she was elected. *Id.* Cusick cites case law, relying on the *Heck* doctrine, finding state law tort claims such as conspiracy and IIED accruing after the favorable resolution of a criminal case. But Cusick does not cite authority that this principle applies to his defamation claim.

---

[7] Defendants at times mischaracterize the complaint. They argue "there is no allegation that the alleged fabricated evidence was ever presented to, or the withheld evidence kept from, the grand jury." (Dkt. 84). The complaint, however, expressly states that "Individual Defendants presented false, misleading and incomplete information to the grand jury." Compl. ¶34, *see also* ¶¶29, 48.

Cusick also does not argue that he did not discover the allegedly defamatory statements until later or that there is any basis for tolling this claim. Count VII is therefore dismissed with prejudice.

### I. IIED (Count VIII)

Cusick alleges that Defendants engaged in extreme and outrageous conduct by fabricating false evidence, maliciously prosecuting him, and withholding exculpatory and impeaching evidence from him. Compl. ¶ 101. As a result of defendants' conduct he "suffered great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages." *Id*. ¶ 106.

Defendants argue that because Cusick was indicted in 2017, his IIED claim is untimely. *See* 745 ILCS 10/8-101 (one year statute of limitations). The Court finds his IIED claim accrued when he was acquitted in December 2019, making this claim timely. *See Rivera v. Lake Cty*., 974 F. Supp. 2d 1179, 1188–89 (N.D. Ill. 2013) (courts in this district "hold consistently that IIED claims based on facts alleged in parallel claims for malicious prosecution accrue only when state criminal proceedings are terminated.") (cleaned up); *Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003) (IIED claim timely where case commenced in May 2002, within a year of plaintiff's acquittal); *Hill*, 463 F. Supp. 3d at 844 (applying *Heck* framework to IIED claim). Count VIII survives.[8]

### J. Willful and Wanton Conduct (Count IX)

---

[8] Cusick concedes that his IIED claim cannot be based on defamation (Dkt. 67 at 38).

"There is no separate, independent tort of willful and wanton conduct." *Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, ¶ 19, 973 N.E.2d 880, 887. Instead "willful and wanton conduct is regarded as an aggravated form of negligence" and so "a plaintiff must plead and prove the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury." *Id*.

Although the complaint broadly alleges that "Defendants had a duty to refrain from willful and wanton conduct in connection with the investigation," Compl. ¶108, the complaint does not articulate any negligence-based duty owed by Defendants to Cusick. Cusick's response brief simply restates his allegations and does not explain the duty any defendant owed to Cusick. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (cleaned up). Count IX is dismissed.

### K. Respondeat superior and indemnification

The only argument by Defendants as to Counts XI and XII is that these claims fail because there are no underlying substantive claims. There are, however, underlying substantive claims so these counts survive.

### L. Immunity Arguments

*1. Prosecutorial Immunity – Donnelly*

22

Donnelly argues that she is protected by absolute prosecutorial immunity from all of Cusick's federal and state law claims. Donnelly was elected LaSalle County State's Attorney on November 8, 2016, and before her election she worked at a private law firm in Ottawa. Compl. ¶ 13. She prosecuted Cusick for his wife's murder, for which he was indicted on February 28, 2017[9] and acquitted in December 2019. (*see* Dkt. 41 at 3; Dkt. 61-1).

"In determining whether actions taken by government officials enjoy absolute immunity or qualified immunity, the Supreme Court applies a 'functional approach ... which looks to the nature of the function performed, not the identity of the actor who performed it.'" *Jones v. Cummings*, 998 F.3d 782, 787 (7th Cir. 2021) (citation omitted). "[P]rosecutors enjoy absolute civil immunity from damages for unconstitutional actions taken in their prosecutorial role." *Conley v. United States*, 5 F.4th 781, 793 (7th Cir. 2021). However, "when prosecutors conduct police-like activity outside their prosecutorial role, the rationale for absolute immunity vanishes and they enjoy only qualified immunity, just like police officers." *Id*. "The analysis hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012). *See also Smith v. Burge*, 222 F. Supp. 3d 669, 694 (N.D. Ill. 2016) ("a prosecutor involved in a conspiracy to target a criminal suspect is not protected by absolute immunity, nor is a prosecutor who fabricates evidence.") (citations omitted).

---

[9] The complaint does not specify the indictment date but Cusick does not dispute this date.

Before her election as State's Attorney on November 8, 2016, the complaint alleges that Donnelly was acting in an investigatory, not a prosecutorial, role. Donnelly appears to concede she would not benefit from prosecutorial immunity before November 8, 2016 (though she argues that as a private citizen she was not was acting under "color of law", (Dkt. 89), the Court rejected that argument above). The Court finds that Donnelly is protected by prosecutorial immunity for her conduct after her election as State's Attorney on November 8, 2016, but not for conduct before that date.[10]

### 2. Qualified Immunity – Donnelly and Englert

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (cleaned up). "[D]ismissal under Rule 12(b)(6) is appropriate based on qualified immunity only when the plaintiffs' well-pleaded allegations, taken as true, do not state a claim of violation of clearly established law." *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (cleaned up). "[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Id.* at 597. Qualified immunity is an affirmative defense and asserting it at the motion to dismiss stage "subjects the defendant to a more

---

[10] Given the limited record before the Court at this pleading stage, if during the course of discovery evidence shows that this date should be adjusted, the parties may raise appropriate arguments at that time. *See Heidelberg v. Manias*, 503 F. Supp. 3d 758, 780 (C.D. Ill. 2020) (further factual development was needed before deciding if conduct during certain meetings was prosecutorial or investigatory).

24

challenging standard of review than would apply on summary judgment." *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018).

Donnelly argues that she is "entitled to qualified immunity on Plaintiff's Due Process claims." (Dkt. 61-1 at 13). The Court has dismissed the Fourteenth Amendment claim in Count I so qualified immunity as to that claim is moot. Donnelly argues that an unlawful pre-trial detention claim does not exist under the Fourteenth Amendment, and in any event was not clearly established before Cusick's acquittal in December 2019. However, "[i]t has been clear since at least *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), that falsifying the factual basis for a judicial probable-cause determination violates the Fourth Amendment," *Lewis*, 914 F.3d at 477, and "it was established law by 1985 (indeed long before)…that a government lawyer's fabricating evidence against a criminal defendant was a violation of due process." *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014).[11] The Court will not dismiss the claims against Donnelly on qualified immunity grounds at this stage.

Englert makes a cursory qualified immunity argument—that Cusick's "right(s) were not sufficiently clear during Englert's investigation of Tracy's death" (Dkts. 42 at 10). In addition to the fact that Cusick had "no obligation to initially anticipate and overcome a defense of qualified immunity in [his] complaint" (*Hanson*, 967 F.3d at 597), the Court also has no obligation to construct arguments for Englert. *See*

---

[11] Whether classified as Fourth or Fourteenth Amendment claim for purposes of assessing qualified immunity at this stage is not critical. Indeed the *Lewis* court explained that it made "no difference that our circuit caselaw situated the constitutional violation in the Due Process Clause rather than the Fourth Amendment." 914 F.3d at 477.

*Kossman v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 211 F.3d 1031, 1038 (7th Cir. 2000) (court "has no duty to research and construct legal arguments available to a party") (citations and quotations omitted). Donnelly and Englert's qualified immunity arguments are denied without prejudice to raising them at a later stage of litigation.

### 3. Sovereign Immunity – Donnelly

Donnelly argues that Cusick's state-law claims are barred by state-law sovereign immunity. Donnelly is sued in her individual capacity. Compl. ¶ 13.

"[S]overeign immunity precludes a lawsuit against an agent of the State of Illinois anywhere but in the Illinois Court of Claims unless the state's agent acts in violation of statutory or constitutional law or in excess of his or her authority." *Smith*, 222 F. Supp. 3d at 696. The exception to the rule of sovereign immunity is "premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not." *Murphy v. Smith*, 844 F.3d 653, 659 (7th Cir. 2016), aff'd, 138 S. Ct. 784, 200 L. Ed. 2d 75 (2018) (cleaned up). As here, when a plaintiff "has plausibly alleged constitutional violations against all Defendants, Defendants are not protected by Illinois' sovereign immunity principles." *Ellis v. Pfister*, 2017 WL 1436967, at *5 (N.D. Ill. Apr. 24, 2017). In *Peirick v. Dudek,* the court addressed a similar argument made by Donnelly. 2020 WL 6682891 (N.D. Ill. Nov. 12, 2020). Defendant there invoked sovereign immunity and relied on *Parmar v. Madigan*, 2018 IL 122265, but the court held that when "an employee of the State, although acting within the scope of his employment, is charged with

breaching a duty that arose independently of his State employment, a suit against him will not be shielded by sovereign immunity." *Id*. at *3 (cleaned up).

This Court agrees with the *Peirick* court's analysis. Accordingly Cusick's state-law claims against Donnelly are not barred by sovereign immunity.

### 4. Witness Immunity – Englert, Denton, Ballanco, Officer Defendants

Englert, Denton, Ballanco and the Officer Defendants argue that they are absolutely immune from liability. Witnesses testifying at trial and before grand juries have absolute immunity from suit. *Rehberg v. Paulk*, 566 U.S. 356, 366–68 (2012). In *Stinson v. Gauger,* plaintiff's claims against defendants focused on their actions while the murder was being investigated, not on their trial testimony or preparation to testify at trial. 868 F.3d 516, 528–29 (7th Cir. 2015). The Seventh Circuit explained that "if a prosecutor does not have absolute immunity for investigating the case, it follows that an expert witness does not either." *Id*. Englert tries to distinguish *Stinson* as involving an investigation and prosecution in Wisconsin, but the Seventh Circuit in reaching that conclusion relied on federal, not state, law. Ballanco argues that immunity covers his conduct "preparing for trial or presented during trial." (Dkt. 77). A fair reading of Cusick's complaint is that the false reports were prepared during the investigatory stage and later used both to secure an indictment and at trial. (Englert's insistence, for example, that his report was not referenced in Cusick's criminal trial contradicts the complaint, ¶ 36. The Court cannot accept Englert's version of the facts at this stage.)

Defendants' conduct during the investigatory stage would not be immune, regardless of whether their reports were ultimately used at trial. The Supreme Court in *Rehberg* explained that "we do not suggest that absolute immunity extends to *all* activity that a witness conducts outside of the grand jury room." 566 U.S. at 370 (emphasis in original). Addressing a claim of witness immunity in *Avery v. City of Milwaukee*, the Seventh Circuit explained that the detectives were "liable under § 1983 for this due-process violation even though their trial testimony, standing alone, would not subject them to damages liability." 847 F.3d 433, 443 (7th Cir. 2017). *See also Liebich*, 2021 WL 1103346, at *4 (rejecting expert doctors' attempt to rely on witness immunity and explaining that "[i]f immunity extended to anything that culminated in trial testimony, immunity would sweep so broadly that it would run the risk of immunizing all investigatory conduct.").

Defendants also invoke the Illinois absolute litigation privilege. "Illinois does not impose tort liability for harmful court testimony. Illinois recognizes an absolute privilege for statements, no matter how reckless or dishonest, made by expert or lay witnesses in testimony or pleadings in judicial proceedings, so long as the statements are relevant to the litigation." *Kim v. Hoseney*, 545 F. App'x 521, 522 (7th Cir. 2013). Cusick contends that the expert defendants were retained prior to the start of any litigation so this privilege does not apply. It is not clear from the complaint which if any of the individual defendants actually testified before the grand jury or at trial. The Court need not sort out these facts now, but if any defendant believes raising the testimonial immunity or absolute litigation privilege is warranted at a later stage the

defendant may do so. For now, Englert, Denton, Ballanco and the Officer Defendants cannot rely on federal absolute immunity or the Illinois absolute litigation privilege as a basis to dismiss the complaint.

## IV.     Conclusion

For the stated reasons, the motions to dismiss [41, 42, 44, 50, 55, 61] are granted in part and denied in part.  Counts I (due process), VII (defamation), and IX (willful and wonton conduct) are dismissed with prejudice. Counts II (unlawful pretrial detention), III (conspiracy), IV (failure to intervene), V (*Monell*), VI (malicious prosecution), VIII (IIED), X (conspiracy), XI (respondeat superior) and XII (indemnification) survive.

E N T E R:

Dated: November 22, 2021

_____
MARY M. ROWLAND
United States District Judge